COURT OF APPEALS OF VIRGINIA


Present:   Judges Powell, Alston and Senior Judge Annunziata
Argued by teleconference


HECTOR LUIS PAGAN

MEMORANDUM OPINION[*] BY
v.        Record No. 2420-09-4              JUDGE CLEO E. POWELL
                                           JANUARY 11, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

Mark S. Thrash for appellant.

Richard B. Smith, Special Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Hector Louis Pagan ("Pagan") pleaded guilty to rape, in violation of Code § 18.2-61, and

to two counts of abduction with intent to defile, in violation of Code § 18.2-48.  Pagan received

three life sentences for these crimes.  On appeal, Pagan argues that the sentencing court abused

its discretion in considering evidence of unadjudicated crimes because that evidence lacked the

requisite indicia of reliability.  Pagan contends that the evidence of sexual molestation, to which

a police detective testified, was double hearsay and, therefore, unreliable.  For the reasons that

follow, we disagree and affirm Pagan's convictions.

I.  BACKGROUND

On March 5, 2009, Pagan pleaded guilty pursuant to an agreement to one count of rape

and two counts of abduction with intent to defile.  The agreement indicated that Pagan was

pleading guilty to, but not admitting, one of the two counts of abduction with intent to defile.  In

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

exchange for his guilty pleas, the Commonwealth agreed to *nolle prosequi* three additional charges but made no agreement as to his sentences. The judge found the defendant guilty and continued the case for sentencing.

At Pagan's sentencing hearing, Arlington County Detective James Stone testified that on the night of January 11, 2007, a woman was approached by a man as she walked home. The attacker put a knife to her face, pulled her hat over her face, and forced her to a grassy area where he vaginally raped her. The attacker also took the victim's cell phone. The victim was taken to a hospital for a PERK.

Detective Stone also described a similar assault that took place the night of February 2, 2007, about two blocks from the January 11 attack. That victim fought back as she was forced into nearby woods. The man used his knife to make "pretty bad lacerations" on the victim's face. During the attack, the victim knocked the perpetrator's eyeglasses off. The attack ended when a passerby responded to the victim's cries for help.

The police later found a pair of eyeglasses a few feet from the spot of the February 2 attack. DNA tests revealed Pagan's DNA on these eyeglasses. Based on this hit, Detective Stone pulled up Pagan's DMV records to find his address. Pagan's most recent DMV photograph showed him wearing eyeglasses that "appeared to be identical to the eyeglasses that were recovered at the February 2nd crime scene."

When questioned, Pagan denied involvement in either attack. A buccal swab obtained from Pagan, however, revealed a match to the DNA on the eyeglasses found at the second crime scene and to the DNA in the PERK taken from the first victim.[1]

---

[1] The DNA in the PERK was a "mixed" sample, having DNA from the victim, her husband, and Pagan, which is why forensic testing did not initially reveal Pagan as the perpetrator.

Per routine police procedures, Detective Stone sent descriptions of the two attacks to other jurisdictions and informed those jurisdictions that a suspect had been arrested. At Pagan's sentencing hearing, Detective Stone testified that he received a phone call from a Fairfax County detective who was investigating an alleged abduction and molestation that occurred inside a van similar to the one Pagan drove for his employment. At that point, Pagan's counsel objected to any evidence of other crimes being admitted because "there has been no cross-examination, there has been no witness . . . regarding . . . what is about to be testified to." After defense counsel acknowledged that he was aware of the alleged other crime, but had not "had a chance to investigate the . . . case," the judge allowed the testimony.

During argument as to Pagan's sentences, defense counsel admitted the seriousness of the charges and that the discretionary sentencing guidelines suggested a term of seventeen to thirty-seven years. He also asked the judge to base Pagan's sentences only on the three charges to which Pagan pled guilty. The Commonwealth argued that the violent nature of Pagan's crimes and the fact that he showed no remorse for the second attack necessitated life sentences for Pagan's crimes. The prosecutor pointed out, without contradiction, that the pre-sentence report reflected that the defendant had had a "25 year career in crime," including at least four burglaries, several *nolle prosequied* assault charges, three grand larcenies, and a "conviction for terroristic threats against his first wife." The prosecutor also noted that not only had Pagan been on probation at the time of these attacks, but also that the rape took place only five months after Pagan had been released from serving six years in prison. The Commonwealth also mentioned the Fairfax investigation. During allocution, Pagan said that he was sorry for the rape. He showed no remorse for the second attack.

Before rendering Pagan's sentences, the judge noted Pagan's long history of committing crimes and referred to Pagan as a "career criminal." The circuit court stated:

> I'm also struck by the fact that you really seem to have a hard time accepting all of what you have done. You say you are sorry for what happened to the first victim. But it is clear, there is no doubt in my mind, that you were there and you were an active participant in what happened to the second victim.
>
> The fact that you just dismiss it and say, "I didn't do it," that to me is saying that you don't accept responsibility for what happened with that person, and that is very troubling, very troubling.

The judge did not mention the Fairfax incident. The court then sentenced Pagan to a life sentence for each of his three convictions, noting "I don't do this lightly, but I do believe that there are some cases where a person does not need to be considered for – to get out."

Pagan subsequently filed several motions including a motion to reconsider his life sentences. This motion asserted that the circuit court should not have allowed Detective Stone's testimony concerning the molestation of a child in Fairfax County. At the hearing on this motion, Pagan's attorney stated, "I realize what your Honor said the last time we were in court. And that is that that the [Fairfax] evidence was of no moment in your Honor's decision regarding sentencing in this matter. And if that's the case, that's the case." Defense counsel, however, added, "[a]lthough I tend to think that something like that, cannot be I mean evidence regarding a ten-year-old girl, sexual molestation in the back of the van. I just don't see how anybody can ignore that."

The circuit court told defense counsel that "I assure you that little bit that I heard and considered [about the Fairfax incident] had very little to do with anything that I - as I decided how I was going to sentence this man."

> I certainly appreciate the - your argument and your position, but as I said before, I think that it may in some ways be misplaced. Because in my mind, as I listen[ed] to the sentencing hearing, certainly - I mean I - I certainly heard that. Make no mistake. I heard it. I said okay, that's something, but I also understand that even though it maybe creates an inference, is that it does not mean that he is convicted or was guilty of anything at this point, because

- 4 -

he wasn't convicted of that. It's just that he is a suspect in the case, perhaps, in Fairfax - at best.

My decision in the sentencing really had to do with just the facts as I understood them from these cases. And I certainly appreciate the fact that if I said the second victim does - I just felt personally as I listened to everything, as I observed the defendant, I listened to him. Is that - and as I had said, I meant in general he just took no responsibility. He was very cavalier in the Court's opinion as to what had happened.

And that was what I was concerned about and that's how - when I formulated my sentence and for these charges which is what I relied on. Not the - the - perhaps any allegation of a case in Fairfax or whatever. I guess - certainly I heard what was said, but it was not - that was not - that was not the determining factor of what the severity of my sentence. I just really - just listened to what he said and the way he said it and I assessed him and I made a decision. I really did not believe that he should be walking the streets.

I appreciate your concern and like I said, I do understand that this is a very severe sentence that I have imposed on him. I mean, I just, I think that if you really feel that strongly that you would like to make your argument for the record, I will give you a continuance . . . . I - I don't believe that it will - it's going to change my opinion, in any way. But I mean I do recognize and I feel that given the severity of it you are entitled to that.

The court continued,

I'm just saying that [the Fairfax evidence] did not affect me one way or the other in terms of my - my reasoning as to how I felt about these particular ones that he plead guilty to and the Alford plea case. These charges . . . that's what concerned me.

The circuit court questioned Pagan's counsel: "My point is given everything that you are saying, what difference does it make if that's not a reason I made my decision?" Finally, the circuit court stated:

I think [Pagan's argument is] misplaced here because [the Fairfax evidence] did not enter into my mind almost at all as to how I wanted to rule in this case. Accordingly, because I do believe that the sentence that was imposed did fit the facts, and what had happen here - I guess I'm going to have to say I do deny your

- 5 -

motion. Because as I said, [the Fairfax evidence] did not – it's not going to matter one way or the other.

Accordingly, the circuit court denied Pagan's motion to reconsider. This appeal follows.

## II. ANALYSIS

Assuming without deciding that the hearsay evidence regarding a molestation investigation in Fairfax County was inadmissible at Pagan's sentencing hearing, its admission was harmless error because the trial court specifically stated that it did not rely upon that evidence in reaching its sentencing decision. Specifically, Pagan contends that the evidence regarding the alleged molestation was inadmissible as it was unreliable. As this objection does not allege a constitutional error, we apply the test for nonconstitutional harmless error.

> We adhere to the United States Supreme Court's test for nonconstitutional harmless error in criminal cases: "[I]f one cannot say, with fair assurance . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)). Here, the circuit court repeatedly stated that it did not base Pagan's three life sentences on the alleged molestation but on Pagan's history as a "career criminal" and on his lack of remorse. Thus, even if the testimony was inadmissible, such error was harmless.[2]

---

[2] On appeal, the Commonwealth initially argues that the sentencing court lacked jurisdiction to consider Pagan's motion to reconsider because the sentencing court failed to modify, vacate, or suspend the sentencing order within twenty-one days of entry of the final order and, therefore, only the arguments made at the sentencing hearing are properly before this Court. The Commonwealth further asserts that the order staying Pagan's transfer to the Department of Corrections is only applicable to Code § 19.2-303's exception to Rule 1:1 and that Code § 19.2-303 only provides a vehicle to modify a sentence after twenty-one days have elapsed when the defendant presents "circumstances in mitigation of the offense," which the Commonwealth contends that Pagan did not do. At oral argument, the Commonwealth argued further that because Pagan's attempt to modify his sentences was grounded on an alleged legal

## III. CONCLUSION

For the foregoing reasons, we affirm.

Affirmed.

---

error by the circuit court, not on any "circumstances in mitigation of the offense" that it was not cognizable under Code § 19.2-303.

The Commonwealth is incorrect that the court lacked jurisdiction. Clearly, as we held in Wilson v. Commonwealth, 54 Va. App. 631, 681 S.E.2d 74 (2009), Code § 19.2-303 gives the trial court jurisdiction over "'all felony convictions provided the defendant has not been sent to the Department of Corrections.'" Id. at 640, 681 S.E.2d at 79 (quoting Esparza v. Commonwealth, 29 Va. App. 600, 605, 513 S.E.2d 885, 887 (1999)). To the extent that the Commonwealth challenges the merits of the motion to reconsider on the basis that a purely legal argument cannot constitute "circumstances in mitigation of the offense," we need not reach this argument because the trial court denied the motion to reconsider without reaching its merits, reiterating that the evidence that Pagan wanted to present had no bearing on the sentences that it imposed.

- 7 -